ORIGINAL

FILED
U.S. DIST. COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

1999 NOV 23 P 3: 36

AUGUSTA DIVISION

*Bmelastly*
U.S. DIST. OF GA.

GUILLERMO MARTINEZ and )
MAUREEN MARTINEZ, )
)
    Plaintiffs, )
)
v. ) CV198-183
)
TRUST COMPANY BANK OF AUGUSTA, )
N.A., a/k/a SUN TRUST BANK, )
)
    Defendant. )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

On October 26, 1999, an evidentiary hearing was held before the Court in the above-captioned Truth In Lending Act ("TILA") case. For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that a final judgment be **ENTERED** in favor of the defendant on the plaintiffs' remaining TILA claim and on the defendant's counterclaim.

## I. FACTS

This case previously came before the Court on cross-motions for summary judgment. On July 12, 1999, the Honorable Chief Judge Dudley H. Bowen, Jr., adopted this Court's June 18, 1999 recommendation that the plaintiffs' motion for summary judgment on all issues of liability be denied and that the defendant's motion for summary judgment be granted in part and denied in part. All of the plaintiffs' state law claims were dismissed without prejudice. The only issues remaining before this Court

58

are whether the plaintiffs were given the proper three day notice of their right to rescind the 1996 refinancing transaction and whether or not the plaintiffs owe the defendant the full amount due under the acceleration clause of the Security Deed.  The following background facts are taken from this Court's June 18, 1999 Report and Recommendation.

The plaintiffs were living in a $150,000 house when they were approached in August of 1995 about buying a home at 29 Park Place Circle for $280,000.[1]  Upon meeting with bank officials, the plaintiffs, already customers of the defendant, were informed that a standard mortgage could be made for them, with the maximum loan amount of $224,000.  The plaintiffs did not have money for a down payment and needed additional financing to reach the purchase price of $280,000.  To close the deal, the defendant arranged a one year bridge loan for an additional $56,000 which would generate the total sales price of $280,000.[2]

When Plaintiff Will Martinez went to the bank one year later in August, 1996, to sign the renewal note on the 1995 bridge loan, he

---

[1]  By way of background explanation concerning the parties involved in the disputed transactions, the defendant financed the real estate developer's acquisition of the Park Place subdivision property, as well as the addition of streets, roads, gutters, sewers, and utility lines in the subdivision.  Speculative houses had been built on the subdivision site, but in August of 1995, no homes had been purchased, and the defendant had extended additional construction loans totaling over three quarters of a million dollars to the developer, C. Murray Williams.  As described in more detail above, Mr. Williams would later sign on as a blind guaranty to the plaintiffs' $56,000 bridge loan.

[2]  The plaintiffs' state law claims which have been dismissed without prejudice revolve around several alterations made to the 1995 bridge loan after the plaintiffs signed it, including the addition of a blind guaranty, a more detailed explanation of charges listed on the original signed copy, and a change in the term of the note to figure the interest on the basis of a 365-day year rather than a 366-day year.

2

discovered for the first time that C. Murray Williams, the real estate developer who had obtained his financing for the subdivision through the defendant, had provided a blind guaranty for one half of the $56,000 bridge loan. However, even after discovering the blind guaranty, the plaintiffs signed the renewal on the bridge loan. On November 25, 1996, the defendant refinanced the original mortgage and the bridge loan into one adjustable rate mortgage with a principal amount of $284,450.00. A new Security Deed, acknowledging that the loan was secured by the plaintiffs' dwelling, was executed in conjunction with the refinancing.

The plaintiffs went to the office of the defendant's attorney, David S. Wilkin, for the refinancing closing on November 25, 1996. Although he had no independent recollection of the plaintiffs' closing among the thousands of closings he has performed over the course of his career, Mr. Wilkin testified that it is his routine to explain to consumers that they have three days to elect to cancel the transaction. Mr. Wilkin also testified that he has never asked someone at a closing to post-date a notice of recission.[3] According to Mr. Wilkin, not only is that practice illegal, but there is no benefit to asking a consumer to post-date the notice because no funds can be disbursed until at least three days after

---

[3]    Although there was testimony at the hearing that Plaintiff Maureen Martinez was asked at the November 25, 1996 closing to sign loan application papers dated November 21, 1996, those loan application papers were provided by the defendant in a packet marked confidential. Although Mr. Wilkin may have handed the packet to Mrs. Martinez, there is no evidence that he created, or even knew about, the papers in the packet. Mr. Martinez had signed the loan application papers on November 21, 1996, but for an undetermined reason, Mrs. Martinez was not available to sign the loan application papers at the same time as her husband. In any event, the loan application papers are not part of the TILA claim.

3

the closing. Even in the case of a refinancing, no check is cut to pay-off the previous mortgage until the three days have lapsed.

Mr. Wilkin testified that he provided the plaintiffs with two copies each of the Notice Of Right To Cancel forms on November 25, 1996, and the plaintiffs were asked to return to his office at the expiration of three business days from the closing to execute the document entitled "Certificate: (That Customer Does Not Rescind Transaction)" (hereinafter "Certificate") if they did not wish to rescind the transaction.[4] Mr. Wilkin testified that the Certificate is not even required by the TILA, but the defendant uses the form as a method to ensure that consumers have received the TILA-mandated disclosures and notice of the right of rescission.[5] Although Mr. Wilkin had no personal knowledge of the

---

[4] In its entirety, the Certificate dated December 2 reads:

## C E R T I F I C A T E

(Customer Does Not Rescind Transaction)

The undersigned certify that they entered into a transaction on November 25, 1996 with Suntrust Bank, Augusta, N.A.

and they were given two copies of Notice of Right of Rescission and Notice of Effect of Rescission, as required, under the provisions of Truth in Lending Act.

Whereas more than 3 business days have elapsed since the undersigned received the above and foregoing NOTICE OF RIGHT OF RESCISSION and other Truth-in-Lending Disclosures concerning this transaction; in order to induce the Creditor(s) to proceed with full performance under the agreement in question; the undersigned do, herewith warrant, covenant and certify that they have not exercised their right to rescind; that they do not wish to and will not rescind said transaction; and that they do hereby ratify and confirm the same in all respects. They further represent that the undersigned are the only persons entitled to rescind, in that they are all of the owners of the real property securing said obligation. DATED: 2nd day of December, 1996 .

NOTE: EACH Customer must sign.

/s/ _____
Guillermo R. Martinez (Customer)

/s/ _____
Maureen Burke Martinez (Customer)

[5] The record contains signed copies of the actual "Notice Of Right To Cancel" forms signed by the plaintiffs. See Def.'s Ex. 1, pp. 25-26. The copy signed by Mrs. Martinez is attached as an exhibit to this Report and Recommendation.

4

plaintiffs returning to his office on December 2, 1996, pages 59 through 61 of Defendant's Exhibit 1 show that no checks were cut for the refinancing transaction until December 2.[6]

On the other hand, the plaintiffs testified that they were asked to sign and post-date the Certificate at the closing and that only Mr. Martinez returned to Mr. Wilkin's office on December 2 to drop off the pre-signed forms. Although the plaintiffs contend that this issue regarding post-dating the Certificate was generally raised during the course of the case, the Court finds that the issue was not specifically raised until Mr. Martinez first submitted a sworn affidavit on April 26, 1999, in opposition to the defendant's motion for summary judgment. However, at the hearing, Mr. Martinez testified that he clearly remembered being asked by Barbara, Mr. Wilkin's assistant who was present during the closing, to sign and post-date the Certificate at the November 25 closing.[7] Mr. Martinez testified that he and his wife did as they were instructed and signed the Certificate at the closing; according to Mr. Martinez, the post-dated form then remained in his car until he returned it to Mr. Wilkin's office on December 2.[8]

---

[6] Although the closing occurred on Monday, November 25, 1996, because of the Thanksgiving holiday, the plaintiffs were not required to return the Certificate until Monday, December 2, 1996.

[7] According to Mr. Martinez, even though he used the word "attorneys" in his affidavit, Plaintiffs' Ex. 21, he actually meant everybody present in the office, including Mr. Wilkin's assistant, Barbara.

[8] The parties spent a significant portion of time arguing about the implication to be drawn from all of the closing papers being signed in black ink and the Certificate being signed in blue ink. The plaintiffs contend they used the pen handed to them by Barbara because the closing was almost finished, and the other pens had been cleared away. The

5

AO 72A
(Rev.8/82)

The plaintiffs continued to make monthly mortgage payments under the terms of the refinancing until August, 1998. At that time, the plaintiffs sent a written notice of rescission, pursuant to 15 U.S.C. § 1635(f), offering to rescind the transaction and return the home to the defendant within twenty days. The defendant has acknowledged receiving the notice of rescission but has maintained that the plaintiffs are not entitled to rescission. Although not making any monthly mortgage payments, the plaintiffs continued to reside at the Park Place home until they abandoned the premises on July 27, 1999. The defendant has refused possession of the Park Place home and the plaintiffs offer of a Quit Claim Deed. The defendant has filed a counterclaim seeking the balance owed under the terms of the Security Deed.

The following stipulations have been made by the parties. The plaintiffs have made no payments on the Park Place home since July, 1998, and the amount due and owing on the plaintiffs' note with the defendant through September 27, 1999 is $304,474.37 with per diem interest of $52.42. In the event of default or collection, the Note and Security Deed held by the defendant provides for statutory attorneys' fees pursuant to O.C.G.A. § 13-1-11. The parties have also stipulated that the plaintiffs paid $19,107.72 in interest on their loan in 1997 and paid $11,049.61 in interest in 1998.

---

defendant argues that the switch in ink color indicates that the Certificate was not signed at the same time as the rest of the closing papers. The Court is not of the opinion that this case turns on the color of the ink used to sign the Certificate and relies instead on the substantive evidence placed before the Court to reach its conclusions.

6

## II.   DISCUSSION

### A.   Truth In Lending Act

Congress enacted the TILA to assure consumers meaningful disclosure of credit provisions, thereby enabling them to more readily compare various available credit terms and avoid the uninformed use of credit. See 15 U.S.C. § 1601; see also Mourning v. Family Publications Serv., Inc., 411 U.S. 356, 364 (1973). In keeping with its purpose, the statute is meant to be construed liberally in favor of the consumer. See Cody v. Community Loan Corp., 606 F.2d 499, 505 (5th Cir. 1979). However, the "remedial scheme in the TIL Act is designed to deter generally illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case." Williams v. Public Finance Corp., 598 F.2d 349, 356 (5th Cir. 1979).

In an effort to further this goal, the TILA mandates that creditors specifically disclose, in writing, certain information, including "finance charges" associated with the extension of credit in a consumer credit transaction. See 15 U.S.C. §§ 1605(a), 1638. Some of the factors that must be disclosed include: the "amount financed"; the "'finance charge,' not itemized"; the "finance charge expressed as an 'annual percentage rate'"; "total payments" as determined by the total of the amount financed plus the finance charge; and the "number, amount, and due dates or period of payments scheduled to repay the total payments." Id. §§ 1638(a)(2)(A), (3)-(6); see also 12 C.F.R. § 226.18 (1999).

Once these required disclosures are made, if a security interest is acquired in property used as the principal dwelling of the credit-seeking consumer, the TILA allows the consumer a right to rescind the credit

7

transaction until midnight of the third day following the completion of the transaction or delivery of the forms containing the required material disclosures. See 15 U.S.C. § 1635(a). The purpose of the three-day waiting period is to provide consumers the opportunity to consider the terms and consequences of their financial commitment. See Rodash v. AIB Mortgage Co., 16 F.3d 1142, 1145, 1146 (11th Cir. 1994). A creditor must also provide two copies of the notice of the right to rescind to each consumer entitled to rescind the credit transaction. See 12 C.F.R. § 226.23(b)(1) (1999).

If the appropriate disclosures or notice of the right to rescind are not provided to the consumer, the rescission period is extended to three years from the date of the transaction. See 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). When a transaction is rescinded, the consumer is no longer liable for any amount owed, including finance charges, and the security interest becomes void. See 12 C.F.R. § 226.23(d)(1). The creditor has twenty days after receipt of the notice of recission to return any money or property given by the consumer, and must take the appropriate steps to end any security interest that may have been created by the transaction. See id. § 226.23(d)(2). If any money or property has been delivered to the consumer by the creditor at the time of the rescission, then the consumer must either return such money or property, or if that is not practicable, the consumer must pay its reasonable value. See id. § 226.23(d)(3).

The TILA also provides civil liability for creditors who do not comply with the requirements of the statute. See 15 U.S.C. § 1640. If the statutory criteria are met, a consumer may be entitled to damages

8

which include actual damages, a fixed amount of statutory damages, costs
of the action brought to enforce the consumer's rights, attorney's fees,
and an amount equaling the total of all finance charges and fees paid by
the consumer.   See id. § 1640(a).

## B.   Notice of Right to Rescind 1996 Refinancing Transaction

The Court previously determined that the plaintiffs were entitled to
a notice of the right to rescind the 1996 refinancing transaction.  Thus,
the Court must now focus its attention on whether the notice provided to
the plaintiffs was appropriate under the TILA.  The Act requires that a
creditor "clearly and conspicuously disclose" a consumer's right to
rescind a transaction.  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1)(ii).
The Eleventh Circuit requires that the Court conduct an intensely fact-
based investigation of the circumstances of the transaction to determine
whether the notice was objectively conspicuous and obvious.  See Rodash,
16 F.3d at 1146; Porter v. Mid-Penn Consumer Discount Co., 961 F.2d 1066,
1076 (3d Cir. 1992).  In Veale v. Citibank, F.S.B., 85 F.3d 577, 580 (11th
Cir. 1996), the court clarified that Rodash should not be read to require
perfect notice, but rather for the proposition that the notice be clear
and conspicuous.  Thus, the evaluation of the propriety of the notice of
recission is not mechanical; rather it is based on the totality of the
circumstances.  See Smith v Highland Bank, 108 F.3d 1325, 1326 (11th Cir.
1997)(per curiam).

The defendant contends that because on December 2, 1996, both
plaintiffs certified that they had been given proper notice and that they
did not wish to exercise that right, there is no dispute that the notice

9

of recission was appropriate. However, according to 15 U.S.C. § 1635(c), written acknowledgment of the right of rescission creates only a rebuttable presumption of proper delivery. The plaintiffs steadfastly maintain that they were improperly instructed to sign and post-date the Certificate indicating that they did not want to rescind the transaction at the closing on November 25, 1996. Relying heavily on Rodash, the plaintiffs argue that it is improper for a debtor to be required to sign a certificate of non-rescission on the date of the transaction. See Rodash, 16 F.3d at 1146-47.

In Rodash, the lender provided the consumer a Notice of the Right to Cancel at the closing. See id. at 1145. On a separate, single sheet of paper, the lender furnished a pre-printed acknowledgment that the Notice of Right to Cancel was received but that the consumer declined the right to cancel the transaction; the consumer signed the acknowledgment. See id. The lender argued that because the consumer signed the acknowledgment, she waived her right to rescind the contract. See id. The consumer argued that providing the Election Not to Cancel at the closing violated the TILA because she had an unqualified right to rescind the transaction for three business days, and she argued that the defendant did not clearly disclose her right to rescind. See id.

The Rodash court held that the Notice violated the TILA because it impermissibly forced an immediate waiver of rights. See id. at 1145-46. As the court of appeals later explained in Highland Bank, 108 F.3d at 1326-27:

> Based on the totality of the circumstances, we found (in Rodash) that the lender violated TILA's requirement of "clear and conspicuous" disclosure of the right to rescind because: (1) the proffer of the notice together with the waiver implied

10

that waiver was possible within the three-day period, although it is not; (2) forcing the borrower to sign a waiver on the date of the transaction would make her believe that the waiver was effective on that date; (3) including the waiver in the same paragraph with the receipt of notice would deceive the borrower as to the nature of what she was signing; and (4) proffering the waiver along with the mortgage papers would lead a consumer to believe that she had to sign the waiver in order to consummate the mortgage transaction. (Citation omitted).

However, here, as in Highland Bank, a close examination of the circumstances surrounding the notice given the plaintiffs concerning their right to rescind leads to the conclusion that the defendant did not violate the terms of the TILA. First, in Rodash the acknowledgment of receipt of the right to cancel and the election not to cancel were contained in one paragraph on a single sheet of paper dated on the same day of the mortgage transaction, thereby requiring only one signature to acknowledge receipt of the notice of the right to rescind and to waive that right. In this case, the plaintiffs were given a separate Notice Of Right To Cancel which informed them of their right to cancel the transaction within three days and required them to acknowledge receipt of the notice on November 25, 1996; the Certificate was a separate form with a different date, December 2, 1996. Unlike Rodash, acknowledging receipt of the Notice did not purport to require the plaintiffs to waive their right to rescind. They signed two acknowledgments, on two separate sheets of paper with two different dates, that they received notice of their right to rescind and then chose to waive that right.

---

³ Each plaintiff signed a copy of the Notice of Right To Cancel Form. The copy signed by Mrs. Martinez is attached as an exhibit to this Report and Recommendation.

11

Even if the plaintiffs were provided the Certificate on the date of the closing and asked by somebody other than Mr. Wilkin to sign the form and then return it on December 2, 1996, the plaintiffs were given the requisite three day cooling off period necessary to make an informed decision regarding the refinancing transaction.  The plaintiffs did not testify that they were confused about their right to cancel the transaction within three business days.  The plaintiffs acknowledge that they took the Certificate with them when they left the closing on November 25, 1996.[10]  There would be no reason to require the plaintiffs to sign and post-date the Certificate at the closing and then allow them to leave the closing with the Certificate if there was a plan or intent to somehow mislead them into believing the right to rescind the transaction was waived at the closing.  That the plaintiffs left the closing with the Certificate in their possession vitiates any argument that they were confused or under the mistaken impression that the waiver of the right to rescind had to be signed in order to complete the closing.[11]

Furthermore, Mr. Wilkin testified that never, in his thousands of closings, has he asked consumers to post-date rescission notices; there is

_____

[10]  Mr. Martinez testified that the form was in his car until he returned it to Mr. Wilkin's office on December 2, 1996.

[11]  At best, Mr. Martinez's belated affidavit attests that he was informed he would still owe money to the defendant if he rescinded the November 25, 1996 transaction.  Given that the plaintiffs already had a mortgage with the defendant prior to the refinancing, it was an accurate assessment that they would still owe money if the refinancing transaction was rescinded.  See Veale, 85 F.3d at 580.  Informing the plaintiffs that they were bound by a previously completed transaction does not amount to an impermissible attempt to mislead the plaintiffs into thinking that they had somehow prematurely waived their right to rescind the refinancing transaction.

12

no advantage to post-dating the forms because the checks are not cut until the three day cooling off period has elapsed.[12]  The evidence shows that no checks were cut for the refinancing transaction until the date appearing on the plaintiffs' Certificate indicating an election not to rescind the transaction.  The plaintiffs' position is also weakened in light of their belated identification in these proceedings of a specific problem with post-dating the Certificate.  The issue was not raised in answers to the Court's mandatory interrogatories, was not specifically identified in the plaintiffs' depositions, and was not included in the plaintiffs' motion for summary judgment.

Based on the totality of the circumstances, the Court finds that the notice of the right to rescind which was provided satisfied the clear and conspicuous notification requirement of the TILA.  Accordingly, the Court **RECOMMENDS** that a judgment be entered in favor of the defendant on the plaintiffs' only remaining TILA claim based on the notice of the right to rescind the November 25, 1996 refinancing transaction.

## C.  Defendant's Counterclaim

In response to the plaintiffs' Complaint, the defendant brought a counterclaim on the plaintiffs' default under the terms of the Security Deed.  The parties have stipulated that the plaintiffs have made no payments on the Park Place home since July, 1998.  Under the terms of the Note and Security Deed, the defendant is entitled to accelerate the note

---

[12]  The Court notes that Mr. Wilkin had no pecuniary interest in the outcome of this case because the defendant affirmatively stated that it would not be seeking indemnification from him should the judgment be in favor of the plaintiffs.

13

and deed to include collection of principal, interest, late fees, costs and attorneys' fees.[13] As the Court has determined that there was no TILA violation on the right of rescission provided for the 1996 refinancing transaction, the Court **RECOMMENDS** that a judgment be entered in favor of the defendant on its counterclaim.

The parties have stipulated that the amount due and owing on the plaintiffs' note with the defendant through September 27, 1999, is $304,474.37 with per diem interest of $52.42. However, the Court notes that the defendant's proposed findings of fact and conclusions of law state an amount of principal, interest, and late charges through October 26, 1999. According to the defendant, it is entitled to judgment on its counterclaim against the plaintiffs for a total of $336,619.00.[14]  This figure includes a request, without any supporting documentation or explanation, for a sum total of attorneys' fees. Therefore, the Court also **RECOMMENDS** that should the district court adopt this Court's findings concerning the defendant's entitlement to judgment, the defendant must submit a current figure of the amount owing under the terms of the Note and Security Deed; the defendant must also submit supporting documentation for its claim for attorneys' fees. The defendant should submit this information within ten (10) days of any final action taken by the district court. The plaintiffs should then have fifteen (15) days to respond.

_____

[13]    The Note and Security Deed held by the defendant provides for statutory attorneys' fees, and the collection of attorneys' fees pursuant to a note is governed by C.C.G.A. § 13-1-11.

[14]    The principal, interest and late charges through October 26, 1999 equal $305,994.55.  Attorneys' fees are claimed in the amount of $30,624.45.

14

## III.   CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that a
judgment be entered in favor of the defendant on the plaintiffs' only
remaining TILA claim based on the notice of the right to rescind the
November 25, 1996 refinancing transaction.   The Court also **REPORTS** and
**RECOMMENDS** that a judgment be entered in favor of the defendant on its
counterclaim, with the amount owing to be determined after the defendant
has submitted supporting documentation for its final judgment request and
the plaintiffs have had a chance to respond.   Finally, because Judge Bowen
dismissed without prejudice all state law claims that the plaintiffs may
have against the defendant, the Court **REPORTS** and **RECOMMENDS** that the
judgment in this case be entered with the condition that the plaintiffs
may pursue any state court remedies they have against the defendant.


SO REPORTED AND RECOMMENDED this $23\kappa\ell$ day of November, 1999, at
Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

15

# NOTICE OF RIGHT TO CANCEL

Refinance of property located at #29 Park Place Circle
Augusta, GEORGIA  30909                                                    **LOAN NO.** 321660
(Identification of Transaction)

### Your Right to Cancel

You are entering into a transaction that will result in a mortgage, lien or security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ November 25, 1996 _____ ; or
(2) the date you received your Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

### How to Cancel

If you decide to cancel this transaction, you may do so by notifying us in writing, at

>      Suntrust Bank, Augusta, N.A.
>      Post Office Box 927
>      Augusta, GEORGIA  30903

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ November 29, 1996 _____
(date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

_____          _____
Consumer's Signature                                    Date

**I Received Notice of Right to Cancel** in Duplicate this Date _____ November 25, 1996 _____ , _____

_____
(Signature)  Maureen Burke Martinez

UNITED STATES DISTRICT COURT
Southern District of Georgia

Case Number:      1:98-cv-00183
Date Served:      November 23, 1999
Served By:        Emmie S. Flanders

Attorneys Served:

Terry P. Leiden, Esq.
George R. Hall, Esq.
F. Michael Taylor, Esq.

_____ Copy placed in Minutes

_____ Copy given to Judge

_____ Copy given to Magistrate